### In re the Matter of the WELFARE OF E.J.B.

#### No. C8-90-1513.

Court of Appeals of Minnesota.

March 19, 1991.

## FACTS

The record of this case is somewhat sketchy. The trial court file does not contain an explanation of why the trial court believed E.J.B. had perjured himself. Respondent State of Minnesota did not file an appellate brief, and E.J.B. provided only a partial transcript. The partial transcript is limited to E.J.B.'s testimony and a few statements by the trial court.

E.J.B. was a minor when he allegedly committed the assault that led to the trial in this case. By the time of trial, however, he had reached the age of majority.

The contempt conviction is based on the trial court's belief that E.J.B. lied under oath about his contact with Sergeant Carlson. Carlson allegedly took a statement from E.J.B. during the investigation of the assault charge and apparently testified at the trial. Carlson was on the state's witness list and at trial E.J.B. was asked several questions regarding Carlson.

Finding E.J.B. guilty of contempt was apparently based on (1) many statements at trial by E.J.B. that he did not remember talking to Carlson and (2) E.J.B.'s statement that he had never seen Carlson and a police officer had never talked to him.

William R. Kennedy, Hennepin County Public Defender, Warren R. Sagstuen, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Lee W. Barry III, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by NORTON, P.J., FOLEY and HUSPENI, JJ.

## ISSUE

Did the trial court err by convicting E.J.B. of contempt of court?

## OPINION

FOLEY, Judge.

Appellant E.J.B. was tried in Hennepin County Juvenile Court on charges of assault in the second degree and misdemeanor possession of a dangerous weapon. The trial court found E.J.B. "guilty of simple assault" and "not guilty of possession of knife." The trial court also found E.J.B. "in contempt of court for blatantly lying by denying any contact with Sgt. Carlson." E.J.B. was sentenced to the juvenile center for the contempt of court. We reverse.

## ANALYSIS

An analysis of this case requires that two classifications be made. First, the type of contempt, either civil or criminal, must be determined.

Whether contempt is civil or criminal is determined by the court's purpose in responding to alleged misconduct, rather than the nature of the misconduct itself. The purpose of civil contempt is to coerce future compliance by imposition of a sanction of indefinite duration terminable on compliance or inability to comply.

*In re Welfare of A.W.*, 399 N.W.2d 223, 225 (Minn.App.1987); *Hopp v. Hopp*, 279 Minn. 170, 173, 156 N.W.2d 212, 216 (1968) (civil

contempt power cannot be used to punish a person for past misconduct). "Criminal contempt is to preserve the authority of the court by punishing past misconduct." *Welfare of A.W.*, 399 N.W.2d at 225 (citing *Peterson v. Peterson*, 278 Minn. 275, 280–81, 153 N.W.2d 825, 828–29 (1967)).

E.J.B.'s contempt conviction is for his alleged perjury. It is criminal contempt because it was for a past act (his answers to questions during the trial) and because the sentence imposed was fixed (there was no opportunity for E.J.B. to remedy).

■ The second classification is the kind of contempt involved. There are two kinds of contempt, direct and constructive. Direct contempt may be punished summarily. Minn.Stat. § 588.03 (1988). Constructive criminal contempt requires criminal procedural safeguards. *Welfare of A.W.*, 399 N.W.2d at 225 (citing *Peterson v. Peterson*, 278 Minn. 275, 153 N.W.2d 825 (1967)).

■ Direct contempt occurs in the immediate view and presence of the court. Minn.Stat. § 588.01, subd. 2 (1988). Direct contempt arises from:

(1) Disorderly, contemptuous, or insolent behavior toward the judge while holding court, tending to interrupt the due course of a trial or other judicial proceedings;

(2) A breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the business of the court.

*Id.*

Minn.Stat. § 588.01, subd. 3 (1988) defines constructive contempt as contempt of which the court has no personal knowledge and was not committed in the court's immediate presence. It includes:

(2) deceit or abuse of the process or proceedings of the court by a party to an action or special proceeding;

(3) disobedience of any lawful judgment, order, or process of the court;

\* \* \* \* \* \*

(7) any other unlawful interference with the process or proceedings of a court;

Here, the act that gave rise to the contempt conviction was E.J.B.'s alleged lie about never seeing Carlson. The statement was made in the presence of the trial court. This suggests direct contempt. However, perjury does not fit any of the statutorily defined acts that constitute direct contempt. Had the act occurred outside the presence of the trial court, it might be considered constructive contempt because of the party's deceit in the court's proceedings. Minn.Stat. § 588.01, subd. 3(2).

We hold that E.J.B. was convicted of constructive contempt because the entire act did not occur before the court. Proof of a perjury requires going beyond what the judge objectively observed in court. E.J.B.'s act is not direct contempt because prevention of perjury is not one of the purposes of the direct contempt statute.

We reverse E.J.B.'s conviction for constructive criminal contempt. E.J.B. was not a minor at the time of his trial, therefore he has a right to a written complaint charging him with perjury and a trial by jury before he could be convicted of contempt.

## DECISION

Reversed.